## In re PARK–83RD STREET CORPORATION.

### No. 136.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1937.

Cullen & Dykman, of Brooklyn, N. Y. (Ralph W. Crolly and Patrick J. Mahoney, both of Brooklyn, N. Y., of counsel), for appellants.

Proskauer, Rose & Paskus, of New York City (Bernard D. Lang, of New York City, and David Katz, of Brooklyn, N. Y., of counsel), for debtor-appellee.

Delafield, Thorne & Marsh, of New York City (Eugene Blanc, Jr., of New York City, of counsel), for appellee Hurd Committee for Prudence Certificates.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Thomas Cradock Hughes and Irving Rozen, both of New York City, of counsel), for appellee trustees of the Prudence Company, Inc.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The debtor is the owner of premises at 983 Park avenue, New York City, subject to a large mortgage indebtedness. The bond and mortgage evidencing such indebtedness were acquired by the Prudence Company, and on December 1, 1932, were assigned by it to Prudence-Bonds Corporation. The latter assigned to Central Hanover Bank & Trust Company as depositary under a deposit agreement, and issued certificates of participation which were guaranteed by the Prudence Company and sold to investors. Such certificates "irrevocably authorized" Prudence Bonds Corporation "and/or" the Prudence Company to perform the acts commonly referred to as "servicing" the mortgage, the most important of which from the standpoint of the grantees of the powers is collection of mortgage interest at the rate of 5½ per cent. per annum and accounting to the certificate holders for interest at the rate of 5 per cent. per annum. Thereafter, because both Prudence Bonds Corporation and The Prudence Company had filed petitions for reorganization under section 77B, a proceeding was instituted in the Supreme Court of New York County, In re Brooklyn Trust Co., 163 Misc. 117, 295 N.Y.S. 1007, which resulted in the appointment of the appellants as substituted grantees of the powers in trust reserved by Prudence Bonds Corporation. The order appointing them was not entered until December 15, 1936. Meanwhile, but after Justice Church had announced his decision in the state court proceeding, Park-83rd Street Corporation, on September 14, 1936, filed its petition initiating the proceedings at bar. By order entered May 21, 1937, the appellants were allowed to intervene, and thereafter they filed objections to the debtor's plan of reorganization. The plan provides for an extension and modification of the debt secured by the mortgage, relieves the Central Hanover Bank & Trust Company from any duties as depositary, and directs it to assign the mortgage to a corporate trustee in trust for the certificate holders. Such trustee is to do its own "servicing" at an annual compensation equal to one-quarter of 1 per cent. of the outstanding certificates. The appellants made no objection to the fairness of the plan, but contended that, in so far as it purported to confer upon the new trustee powers to "service" the mortgage, it illegally encroached upon the powers in trust conferred upon them by decree of the state court. They also contended that unanimous consent by the certificate holders was required for any plan. Their objections were overruled, and the plan was confirmed by order dated May 28, 1937. This is the order appealed from.

Much of the argument has revolved about the validity of the state court's decree and its effect as res judicata. These questions are immaterial in our view. We shall assume for purposes of decision the existence of unrevoked powers in trust reserved by Prudence Bonds Corporation and the validity of the appellants' appointment as substituted grantees of such powers. Nevertheless, the powers vested in them were subject to be affected by the bankruptcy court's exercise of jurisdiction to reorganize the debtor and its property. In the case of In re Central Funding Corp., 75 F.2d 256 (C.C.A.2), this court held that a mortgage trustee could not object to a plan of

reorganization which wiped out the existing trust mortgage and directed the trustee to transfer its collateral to a new corporation organized to carry on the old corporation's business and to liquidate over an extended period the transferred assets. Similarly, in the case at bar, had the plan of reorganization extinguished the mortgage and substituted for outstanding participation certificates shares of stock of the debtor, or of a new corporation to which its property was conveyed free of the mortgage lien, the appellants' powers to "service" the mortgage would certainly have ended. Being but ancillary to the mortgage, the powers would necessarily fall with its extinction. So much the appellants apparently concede, but they answer that since the plan preserves the mortgage, though with modifications, and assigns it to a new trustee, the powers must continue to attach to it. We think not. The question is of the court's power. If it has power to cancel the mortgage and thus end the appellants' powers in trust, it also has power to end them by so modifying the mortgage as to render impossible their continuance. To hold otherwise would exalt form over substance; it would mean that the court must require the debtor to go through the useless form of canceling the old mortgage and then executing a new one with the desired modifications. Surely that cannot be necessary. Moreover, the plan modifies the rights of the certificate holders, making them beneficiaries of an express trust. Such a modification the court clearly has power to make, and, as an incident to this feature of the plan, the appellants' powers in trust must necessarily come to an end. The broad powers conferred upon the bankruptcy court by subdivisions (b)(9), (b)(10) and (h), § 77B, 11 U.S.C.A. § 207(b) (9, 10), (h), are not to be restricted because their exercise may have the incidental effect of so changing the rights of certificate holders with respect to the debtor's property that powers in trust previously created by them can no longer be exercised to accomplish their purpose. Whether the appellants could have claimed rights as creditors of the debtor, we need not say, since they never attempted to do so within the time limited for presenting claims.

The appellants further contend that no plan of reorganization can be validly confirmed without the unanimous consent of participation certificate holders. The argument is that the certificate holders own undivided shares in an indivisible debt secured by the debtor's mortgage, and therefore cannot be treated as a class of creditors, but constitute in solido a single creditor owning a single claim; hence unanimity is necessary to vote the claim, and assent to the plan of reorganization by 71 per cent. of the certificate holders was ineffective. But this contention runs counter to the purposes and definitions of the statute. Section 77B(b) (10), 11 U.S.C.A. § 207(b) (10), defines "creditors" to include all holders of claims of whatever character against the debtor or its property; "claims" to include securities, other than stock, liens, or other interests of whatever character; and "securities" to include evidences of indebtedness, either secured or unsecured, and certificates of beneficial interests in property. Partial assignees of a certificated mortgage certainly hold "claims" as thus defined. This court so held without discussion in Re Westover, Inc., 82 F.2d 177 (C.C.A.2). We adhere to it.

The order is affirmed.